### ROWE et al. v. HILL et al.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1914.)

No. 2412.

1. DEEDS (§ 194*)—TIME OF DELIVERY—PRESUMPTION.

In the absence of proof to the contrary, a deed shown to be in the possession of the grantee must be presumed to have been delivered on the day it bears date.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 574–583, 623, 634; Dec. Dig. § 194.*]

2. JUDGMENT (§ 682*) — PERSONS BOUND — GRANTEE IN UNRECORDED DEED — SUIT AGAINST GRANTOR.

Complainants, I. W. Rowe and Hannah Rowe, citizens and residents of West Virginia, were grantees in a deed to land in Kentucky. After delivery of their deed, but before it was recorded, a suit was begun in a state court to quiet title to the same land in the present defendant against their grantor, and a warning order was issued to "J. W. Rowe," described as a citizen and resident of Pennsylvania, as an alleged purchaser under an unrecorded deed. Service was not made on the defendant in such suit, so as to create a lis pendens, until after the deed was recorded. Held, that complainants were not bound by the decree in said suit, either as actual parties or privies in estate with their grantor, or as purchasers pendente lite.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1203–1205; Dec. Dig. § 682.*]

3. BOUNDARIES (§ 3*)—RELOCATION OF SURVEY—GENERAL RULES.

In a suit to quiet title, defendant claimed under an older survey made in 1858; the question being whether the boundaries of such survey included the tract in suit. The beginning corner was established, but no marked lines or corners were found. The survey and patent described the tract as containing 100 acres, and the calls, when run according to course and distance, inclosed about that quantity of land, but did not even approximately reach points and lines and corners of older surveys

---

claimed by defendant to be called for, which would inclose about 650 acres, nor was it shown that such lines and corners had been marked, or were otherwise known and established, in 1858. The evidence fairly showed that the survey was a "paper" survey, and that a very small part, if any, of the lines were actually run. *Held*, that the case did not come within the established rule in Kentucky that course and distance must yield to calls for natural objects or the lines of other surveys which were then actually marked and visible on the ground, or were susceptible of definite and certain location.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

4. QUIETING TITLE (§ 12*)—RIGHT OF ACTION IN FEDERAL COURT—NECESSITY OF POSSESSION.

Under the federal equity practice, independent of a state statute, a bill to remove a cloud from title will not lie where the complainant is not in possession of the premises, and cannot be maintained without proof both of possession and of legal title; nor is the complainant relieved from the necessity of making such proof by the fact that the denial of his possession in the answer is accompanied by an allegation of possession in defendant and an incidental prayer that his own title be quieted.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 44, 45; Dec. Dig. § 12.*]

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew N. J. Cochran, Judge.

Suit in equity by I. W. Rowe and Hannah Rowe against John Hill, Nancy Hill, Sam Kidd, Pinkie Kidd, and W. A. Kinne. Decree for defendants, and complainants appeal. Reversed.

For opinion below, see 196 Fed. 910.

H. C. Gillis and J. B. Snyder, both of Williamsburg, Ky., for appellants.

O. H. Waddle, of Somerset, Ky., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This suit was brought by the plaintiffs, I. W. Rowe and Hannah Rowe, his wife, citizens of West Virginia, by bill in equity against five citizens of Kentucky, of whom Pinkie Kidd, wife of Sam Kidd, hereinafter called the defendant, is the real party in interest, to remove an adverse claim of the defendant as a cloud upon the plaintiff's title to a tract of land in Wayne County, Kentucky, of the requisite jurisdictional value.

The plaintiffs claim title under patents issued to one Alexander in 1880 and 1881. The defendant claims under a patent issued to one Mills in 1858, which, being senior to the Alexander patents, is admittedly superior thereto to the extent to which it may be properly located within their boundaries. The Mills patent calls on its face for only one hundred acres; but if located according to the defendant's contention, contains about six hundred and fifty acres. The extent of the conflict between these patents, involving the question of the location and extent of the Mills patent, is the underlying question in controversy. By a judgment of the Circuit Court of Wayne County, Kentucky, in a former suit of Alexander et al. v. Hill, which was affirmed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the Court of Appeals of Kentucky, and which is relied on by the defendant as a bar to the present suit, the location and extent of the Mills patent was adjudged in accordance with her present contention.

The court below, after a hearing on pleadings and proof, was of opinion that the plaintiffs were estopped from claiming that the true location of the Mills patent is not as adjudged in said former suit, and that, even if such location were still an open question, it would not be justified in deciding the matter differently from the state courts; and hence dismissed the plaintiffs' bill with costs; from which decree the plaintiffs have appealed to this court.

[1] The following facts are undisputed in reference to the former judgment in the case of Alexander et al. v. Hill.

By warranty deed, dated November 1, 1903, and acknowledged November 22, 1903, Alexander, the patentee in the above mentioned junior patents, conveyed them to the plaintiffs, Rowe and wife, who were then citizens and residents of West Virginia. This deed was lodged for record in the county court clerk's office on January 12, 1904. While proven by a certified copy, the original was shown to be in the possession of the plaintiffs. The inference from the testimony is that it was delivered to them at least a month before its lodgment for record. And, under the great weight of authority, in the absence of proof to the contrary, it must be presumed to have been delivered on the day it bears date. Land Co. v. Hilton, 121 Tenn. 308, 321, 120 S. W. 162; Raines v. Walker, 77 Va. 92, 93; and cases cited. And see Goodlett v. Goodman Co. (6th Circ.) 192 Fed. 775, 113 C. C. A. 61.

On January 11, 1904, after the delivery of this deed, but before its lodgment for record, the defendant Pinkie Kidd, then Pinkie Hill, claiming to be owner of the Mills patent by mesne conveyances from the patentee, filed a petition in equity in the Circuit Court of Wayne County to quiet her title to this patent, against Alexander, the patentee under the junior patents, and one "J. W. Rowe," described as a citizen and resident of Mahaney City, Pennsylvania, to whom it was alleged Alexander had conveyed a portion of the land by an unrecorded deed. On the same day summons issued for Alexander, which was served February 1, 1904. On January 25, 1904, a warning order was issued for the defendant "J. W. Rowe." Apparently, however, this order was not based upon the affidavit required by sec. 58 of the Kentucky Civil Code, and no report was filed by the warning order attorney, as required by sec. 59 of said code. On March 17, 1904, an answer was filed in the name of Alexander and "J. W. Rowe," which was signed "Alexander and Rowe," by their attorneys, in which the defendants admitted that Alexander had conveyed a part of the land covered by his patents to "his co-defendant, J. W. Rowe," who then claimed to be the owner thereof. Alexander having subsequently died, an attempt was made to revive the cause against his widow and heirs, some of whom were proceeded against by a warning order without proper affidavit. An order of revivor having been entered, a trial was had, resulting in the entry of a judgment adjudging the present defendant, then Pinkie Hill, to be the owner of the Mills patent, locating its boundaries as now claimed by her, and quieting her title to such bound-

ary as against the defendants. On an appeal taken by the defendants this judgment was affirmed by the Court of Appeals of Kentucky. Alexander v. Hill, 108 S. W. 225, 32 Ky. Law Rep. 1148 (not officially reported).

[2] The plaintiffs are not, however, bound by said former judgment, as actual parties thereto; the warning order against "J. W. Rowe," a citizen and resident of Pennsylvania, being insufficient to bring before the court I. W. Rowe, a citizen of West Virginia, even if the proceedings had been otherwise regular, and no steps at all having been taken to make Hannah Rowe a party. They are not bound by said judgment as privies in estate with either Alexander, his widow or his heirs, even if the judgment rendered after Alexander's death can be regarded as valid, since the deed from Alexander to them had been delivered before the institution of the suit. Dull v. Blackman, 169 U. S. 243, 18 Sup. Ct. 333, 42 L. Ed. 733; Cook v. Lasher (4th Circ.) 73 Fed. 701, 704, 19 C. C. A. 654; Carroll v. Goldschmidt (2d Circ.) 83 Fed. 508, 509, 27 C. C. A. 566; Lynch v. Burt (8th Circ.) 132 Fed. 417, 428, 67 C. C. A. 305; Ingersoll v. Jewett, 16 Blatchf. 378, 13 Fed. Cas. 45; Allin v. Hall, 1 A. K. Marsh. (Ky.) 525, 527; 23 Cyc. 1253, 1257. Neither are they bound by said judgment by reason of the fact that their deed was not recorded until after the commencement of the suit, since, apart from the disputed question as to whether a vendee under a prior unrecorded deed is bound as a purchaser pendente lite (25 Cyc. 1480, 21 Am. & Eng. Enc. Law [2d Ed.] 650), their deed was lodged for record before the lis pendens began by the service of process upon Alexander. County of Warren v. Marcy, 97 U. S. 96, 106, 24 L. Ed. 977; Pitt v. Rodgers (9th Circ.) 104 Fed. 387, 390, 43 C. C. A. 600; McClaskey v. Barr (C. C.) 48 Fed. 130, 133; Wheeler v. Walton Co. (C. C.) 65 Fed. 720, 722; Wickliffe v. Breckenridge, 64 Ky. (2 Bush) 427, 443; Staples v. White, 88 Tenn. 30, 31, 12 S. W. 339; 25 Cyc. 1463; 21 Am. & Eng. Enc. Law (2d Ed.) 610. Nor are they bound by said judgment, even if, as found by the court below, the defense made by Alexander to the suit was made both for himself and them, in pursuance of an understanding and agreement with them, since, whatever may have been Alexander's action in that regard it was not open and known to the other party; and the estoppel arising by reason of assuming the defense of a suit must, as in other cases, be mutual. Lane v. Welds (6th Circ.) 99 Fed. 286, 288, 39 C. C. A. 528; Andrews v. Pipe Works (7th Circ.) 76 Fed. 166, 173, 22 C. C. A. 110, 36 L. R. A. 139; Cramer v. Manufacturing Co. (9th Circ.) 93 Fed. 636, 637, 35 C. C. A. 508; Hanks Assoc'n v. International Co. (2d Circ.) 122 Fed. 74, 75, 58 C. C. A. 180; 23 Cyc. 1250. It is true that if the plaintiffs knew of the pendency of said suit, and, either through the agency of Alexander or by attorney, actually participated in its defense in the name and under the guise of "J. W. Rowe," and through such representative filed the answer in such name in which it was admitted that Alexander had made a conveyance to such "J. W. Rowe," thereby misleading the defendant as to the name and identity of the purchaser and causing her to fruitlessly pursue her litigation against such fictitious vendee, they would now, in our opinion, be

estopped from denying their identity with "J. W. Rowe" as Alexander's vendee, and would, by reason of such estoppel, be bound by the judgment rendered against "J. W. Rowe" in the former suit, as if they had actually been parties. However, while the circumstances are such as to create a suspicion that the facts were as above suggested, yet, after careful consideration of the meager evidence in the record, especially in default of the testimony of either of the attorneys who represented "Alexander and Rowe" in the former suit, one of whom apparently died before proof was taken, we are constrained to conclude that the evidence is sufficient only to create such suspicion and not substantial enough to establish the fact.

We hence must hold, upon the evidence in the record, that the plaintiffs, not having been actually parties to the former suit, not being estopped from denying that they were parties, and not being privies in estate with Alexander, either as purchasers pendente lite or otherwise, are not now bound by the former judgment in said cause or estopped from contesting the location of the boundaries of the Mills patent as therein determined.

The defendant, on the other hand, is not estopped from claiming that the Mills patent is to be located in accordance with said former judgment, by reason of an earlier judgment, upon which the plaintiffs rely, in an action for trespass in cutting timber, brought by Alexander in 1902 against one John Hill, who is claimed to have been the equitable owner of the Mills patent, since, apart from other questions, it does not appear from the record in said trespass suit that the question of the boundary of the Mills patent was adjudged therein, either expressly or by necessary implication. The court below, therefore, correctly held that such judgment was not res adjudicata as against the defendant.

[3] The question as to the location and boundaries of the Mills patent presents great difficulty. The survey was made and the patent issued in 1858. Both describe the tract as containing one hundred acres. The description in the survey, which is substantially followed in the patent, is as follows:

"Being and lying in the County of Wayne on the waters of the Big South Fork and bounded as follows, to-wit: Beginning at a poplar; running S 55 E 200 poles to a stake at the river cliff; N 40 E 40 poles to a stake; N 50 W 200 poles to a stake; N 21 E 40 poles to a stake; N 20 W 60 poles to a stake at the river cliff; S 80 poles to a stake; N 70 W 10 poles to a stake; S 45 W 20 poles to a stake at the river cliff; N 10 E 60 poles to a stake on Thomas Ryan's line; thence with said line N 85 W 60 poles to a stake on said line; S 71 W 40 poles to a stake on Isaac Foster line; S 33 E 150 poles to J. W. Mills' corner a pine; thence with Mills' old line to the beginning."

The location of the poplar beginning corner is, we think, established by the preponderance of the evidence in accordance with the defendant's contention. However, no marked lines or corners of this survey have been found; and it is clear, from the character of the surveyor's plat and otherwise, that he did not actually run its lines, except perhaps for a short distance, but made, in the main at least, a paper survey merely. The calls of this survey when run according to course and distance, enclose a boundary of about one hundred acres;

but they do not even approximately reach either the river cliffs or the lines and corner claimed by the defendant to be the Ryan, Foster and Mills lines and the Mills pine corner called for in the survey, to which she contends the lines of the patent should be extended, as located in the former suit of Alexander et al. v. Hill, thereby enclosing a boundary of about six hundred and fifty acres. In such former suit the Kentucky Court of Appeals, having first found that the Ryan, Foster and old Mills lines and the Mills pine corner were "well known and established" at the time of the Mills survey in 1858, thereupon held that the courses of the patent should be changed and the distances extended so as to reach the river cliffs and such lines and corner under the "well settled" law that, "where there is a conflict between the course and distance and recognized objects establishing the boundary lines of a survey, course and distance must yield and the natural objects and established boundaries of other tracts called for, and designated known points therein must be accepted as the true boundary of the land in question." Alexander v. Hill, supra, 108 S. W. at page 228, 32 Ky. Law Rep. at page 1150.

In so far as the principle of law upon which this decision is based has become a rule of property in Kentucky, it should unquestionably be followed by this court, if applicable to the facts now in evidence, even although the judgment itself is not binding upon the parties as res adjudicata; and, regardless of its binding effect, we would with great reluctance feel ourselves constrained to differ from the highest tribunal of the state in a decision affecting title to real estate within its borders.

However, the evidence in the present case is not the same as that formerly before the state courts. While it partly consists of depositions taken in the former suit, it does not appear that it contains all of the former evidence, and, on the other hand, some new and material evidence was introduced. After careful consideration of the evidence in the present record, we find that it does not justify us in locating the boundaries of the Mills patent in accordance with the former judgment, under the rule of law applied by the Kentucky Court of Appeals. The essential difference is that there is no evidence in the present record that either the Ryan, Foster or old Mills line or the Mills corner were "well known and established" in 1858, when this survey was made. Even assuming that the tracts whose lines and corner are called for in the survey have been satisfactorily identified by the defendant, which is not entirely clear, especially in reference to the old Mills line and corner, the evidence, construed most favorably to the defendant, merely shows that some of the lines and corners of these tracts had been marked when examined many years later by the witnesses whose testimony was introduced in the present case. There is no evidence, however, as to the age of the marks on these lines and corners; and no evidence whatever establishing, either directly or by necessary inference, that any of the lines and corners of these tracts had been marked or were otherwise well known and established in 1858. The evidence therefore is entirely insufficient to bring the case either within the rule of decision applied by the Kentucky Court of Appeals in the former

suit, or within the otherwise well settled Kentucky rule that a course and distance called for in a survey, when not actually run and marked by the surveyor, will be controlled by a call for the line of another tract which was then actually marked and visible on the ground, so as to be assimilated to a natural object. Mercer v. Bate, 4 J. J. Marsh. (Ky.) 334, 343; Ralston v. McClurg, 9 Dana (Ky.) 338, 341; Mathews v. Pursifull (Ky.) 96 S. W. 803, 804, 29 Ky. Law Rep. 1001, 1002. And see Jones v. Hamilton, 137 Ky. 253, 258, 125 S. W. 695. Nor does the evidence bring the case within the rule stated in Morgan v. Renfro, 124 Ky. 314, 99 S. W. 311, 313, 30 Ky. Law Rep. 533, 535, quoted and approved in Brashears v. Joseph, 108 S. W. 307, 310, 32 Ky. Law Rep. 1139, 1143, decided on the same day as Alexander v. Hill, that, in locating a patent, "calls for the lines of other patents, which are of record and which are susceptible of definite and certain location," are to be preferred to courses and distances. And see Baxter v. Evett, 7 T. B. Mon. (Ky.) 329, 333. The record contains no copy of either the survey or patent of the Ryan or Foster tracts. While it is said that there was a recorded survey of the Ryan tract upon which a patent issued, it is shown that no survey can be found in Foster's name; and there is no evidence whatever that any patent ever issued to the tract claimed by the defendant to be identified as the Foster tract. Nor does the proof show any recorded survey or patent for the tract which the defendant claims to have identified as the old J. W. Mills tract. Obviously, therefore, the case is not brought within the rule laid down in Morgan v. Renfro, supra, as above quoted.

We are furthermore satisfied from evidence in the present record not contained in the former suit, that the map on which the defendant relies, which was made the basis of the judgment in the former suit of Alexander et al. v. Hill, is incorrect in substantial respects, especially in reference to the location of the river cliffs and their proximity to the Ryan tract.

For the foregoing reasons, without setting forth other difficulties in the way, we are constrained to hold that the evidence in the present case does not bring it within the rule laid down in Alexander v. Hill, supra, or justify us in locating the boundaries of the Mills patent as therein adjudged.

[4] We find it unnecessary, however, to now determine the true boundary of the Mills patent under the confused and unsatisfactory evidence in the record, involving the extent to which such evidence would, under the rules of law applicable in such cases, justify a departure from the courses and distances given in the survey; or the extent to which the defendant has, under her deeds, deraigned title to such boundary. This is a bill to remove the defendant's claim as a cloud upon the plaintiff's title, or as it appears to be called under the Kentucky practice, a bill to quiet title. See Whitehead v. Shattuck, 138 U. S. 145, 153, 11 Sup. Ct. 276, 34 L. Ed. 873. It is well settled, however, that, under the Federal equity practice, independently of a state statute, a bill to remove cloud from plaintiff's title will not lie where the plaintff is not in possession of the premises, and can not be maintained without proof both of possession and of legal title. United

States v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110; Frost v. Spitley, 121 U. S. 552, 555, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Peck v. Ayers Co. (6th Circ.) 116 Fed. 273, 275, 53 C. C. A. 551; American Ass'n v. Williams (5th Circ.) 166 Fed. 17, 20, 93 C. C. A. 1; Butterfield v. Miller (6th Circ.) 195 Fed. 200, 202, 115 C. C. A. 152. The remedy at law by ejectment is otherwise plain, adequate and complete. United States v. Wilson (U. S.) supra, 118 U. S. 89, 6 Sup. Ct. 991, 30 L. Ed. 110; Butterfield v. Miller (6th Circ.) supra, 195 Fed. 202, 115 C. C. A. 152. The Kentucky practice is furthermore the same in this respect, the Act of July 3, 1893 authorizing "any person, having both the legal title and possession to lands, to institute and prosecute suit, by petition in equity in the circuit court of the county where the lands or some part of them may lie, against any other person setting up claims thereto." Carroll's Kentucky Statutes, 1909, c. 1, § 11, p. 185. "To entitle a party to maintain an action to quiet his title, he must show possession in himself as well as title." Webb v. Adams (Ky.) 58 S. W. 585, 586.

The bill in the present suit alleged that the plaintiffs were the owners and in actual possession of the tract of land sued for. The defendant, in her original and amended answers, denied both the plaintiffs' possession and ownership of the tract claimed by them, and also alleged her own ownership and possession of the land claimed by her within the boundaries sued for. The plaintiffs' possession of the land sued for having thus been directly put in issue, it therefore became necessary for them to prove, not only title, but also possession, in order to entitle them to maintain their suit.

The fact that the defendant in her amended answer accompanied her denial of the plaintiffs' possession with an assertion of her own possession and an incidental prayer that her own title be quieted, did not relieve the plaintiffs from the necessity of proving their possession. The instant case is, in this respect, entirely different from those in which it has been held that where the want of equitable jurisdiction by reason of a plain and adequate remedy at law, appears upon the face of the plaintiffs' bill, the defendant waives objection to such jurisdiction unless made in limine. Reynes v. Dumont, 130 U. S. 394, 9 Sup. Ct. 486, 32 L. Ed. 934; Kilbourn v. Sunderland, 130 U. S. 514, 9 Sup. Ct. 594, 32 L. Ed. 1005; Brown v. Lake Superior Co., 134 U. S. 530, 536, 10 Sup. Ct. 604, 33 L. Ed. 1021; Hollins v. Brierfield Co., 150 U. S. 371, 381, 14 Sup. Ct. 127, 37 L. Ed. 1113; Perego v. Dodge, 163 U. S. 160, 164, 16 Sup. Ct. 971, 41 L. Ed. 113. Here no defect in the equitable jurisdiction appeared upon the face of the plaintiffs bill, which alleged the plaintiffs' possession. The defendant specifically raised this issue in limine by denying plaintiffs' allegation of possession; and the fact that she asserted in her answer that she was herself in possession of the land in controversy and claimed the right to have her own title quieted—although her answer was not filed as a cross-bill for that purpose—not only did not waive the plaintiffs' proof of possession, but, on the contrary, emphasized her denial of the plaintiffs' possession. In this respect the case is analogous to Webb v. Adams (Ky.) supra, in which, under a petition to quiet the plaintiffs' ti-

tle and a cross petition denying the plaintiffs' title and possession and seeking to quiet the defendant's title, it was held that, as the controversy arose over the location of a line dividing the lands of the parties, and the disputed territory was open woodland, common to both parties, so far as possession went, and "ground of common dispute," neither had shown such possession as was essential to the right of action, and that both the petition and cross petition should be dismissed, without prejudice to their legal rights.

The plaintiffs have, however, failed to show any actual possession of the lands sued for within the boundary claimed by the defendant. While there is some evidence that Alexander at one time had an enclosure extending a short distance within this boundary, it is not shown that this enclosure was being maintained by the plaintiffs at the time they filed their bill. And while they have shown possession of a house formerly built by Alexander within the boundaries of his patents, nevertheless, as this is outside of the boundary claimed by the defendant under her older patent, it is doubtful, by analogy to the rule laid down in Trimble v. Smith, 4 Bibb (Ky.) 257, 258; Kentucky Co. v. Crabtree, 113 Ky. 922, 926, 70 S. W. 31, and Curtis v. Warden, 144 Ky. 383, 384, 138 S. W. 245, whether this can, in any event, be regarded as even a constructive possession of the land in dispute as against the defendant's older patent, regardless of the question, which we do not determine, whether the defendant has likewise failed to show any actual possession within the disputed boundary.

On the whole we have grave doubt whether, under the evidence in the record, the plaintiffs have shown such possession of the land in controversy as is essential to the maintenance of their bill, even in the light of the rule stated in Roberts v. Northern Pacific Co., 158 U. S. 1, 30, 15 Sup. Ct. 756, 39 L. Ed. 873, that under a statute similar to that in Kentucky a bill to quiet title may be maintained upon an actual possession of part of the land in controversy and constructive possession of the remainder, if vacant and unoccupied.

However, as we are not entirely satisfied that plaintiffs' failure to offer more definite proof on the question of their possession may not have been due to a misconception of the legal effect of the defendant's prayer that her own title be quieted, and in view of the fact that the court below did not pass upon this question and of the amount of proof that has been taken upon the various issues in the case, we think it proper, under all the circumstances, without further definite determination, to now reverse the decree below dismissing the plaintiffs' bill and to remand the case for further proceedings not inconsistent with this opinion, with the direction to the court below to reopen the case for further proof at large, not only as to the question of the plaintiff's possession and title, including the location and extent of the Mills patent, but also as to the former judgment in Hill v. Alexander, and all other issues in the case. (For instances of analogous action by the appellate court, see Noble v. Seary, 223 U. S. 65, 32 Sup. Ct. 194, 56 L. Ed. 353; Snead v. Scheble [6th Cir.] 175 Fed. 570, 574, 99 C. C. A. 578; Butterfield v. Miller [6th Cir.] supra.) And since, upon the reopening of the proof in the court below, further testimony may be-

taken in open court under the new Equity Rules, we have no doubt but that the learned trial judge, by his direction and supervision of the case, will be able to bring clearness and precision out of the present confused testimony and to satisfactorily ascertain the facts necessary to a just determination of the several issues involved.

A decree will accordingly be entered, reversing the decree below and remanding the case for further proceedings in accordance with this opinion. Neither party will recover costs in this court; the costs below will abide the event.