KESSLER et al. v. WILLIAM NECKER, Inc.

(District Court, D. New Jersey. June 9, 1919.)

1. COURTS ☞371(2) — FEDERAL COURTS — JURISDICTION — ENFORCEMENT OF EQUITABLE RIGHTS UNDER STATE STATUTES.

Under Judicial Code, § 24 (Comp. St. § 991), giving a federal District Court jurisdiction of suits at common law and equity where the matter in controversy exceeds, exclusive of interest and costs, $3,000, between citizens of different states, the District Court may administer equitable rights created by valid state statutes, if the enforcement of such rights does not impair any right conferred or conflict with any inhibition imposed by the Constitution of the United States.

2. COURTS ☞371(1)—FEDERAL COURTS—ENFORCEMENT OF RIGHTS UNDER STATE STATUTES.

Rights created or provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the federal courts, either at law or in equity, or in admiralty, as the nature of the new rights may require.

3. COURTS ☞371(2)—FEDERAL COURTS—ENFORCEMENT OF RIGHTS UNDER STATE STATUTES.

An enlargement of equitable rights by state statutes may be administered, by the federal courts, as well as by the courts of the states.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

**4. COURTS ⊂∞372(1)—FEDERAL COURTS—ENFORCEMENT OF RIGHTS UNDER STATE STATUTES.**

A party, by going into a federal court, does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality.

**5. COURTS ⊂∞371(1)—APPOINTMENT OF RECEIVER—PROCEEDINGS IN FEDERAL COURT UNDER STATE STATUTES.**

Stockholders in an insolvent corporation may in the federal District Court maintain a suit for the appointment of a receiver under Corporation Act N. J. 1896, § 65; other necessary elements being present to give the court jurisdiction.

**6. COURTS ⊂∞37(2)—APPOINTMENT OF RECEIVER BY FEDERAL COURT UNDER STATE STATUTE—JURISDICTION—WAIVER.**

Where a receiver was appointed by the federal court under Corporation Act N. J. 1896, § 65, for an insolvent corporation, and the corporation raised no objection to the jurisdiction of the federal court, the jurisdictional question was waived, and could not, after 2½ years, be raised by a receiver in chancery, appointed by the state court, nor by stockholders petitioning for a transfer of property from the federal receiver to the state receiver.

**7. COURTS ⊂∞371(1)—JURISDICTION OF STATE AND FEDERAL COURTS—COMITY.**

In receivership proceedings, the practical purpose of courts generally is to see that insolvent estates are administered economically, so that the largest possible dividend may be paid to creditors and the interest of stockholders preserved, and to accomplish such purpose comity between state and federal courts should be extended to its largest limits.

In Equity. Suit by Frederick Kessler and others against William Necker, Incorporated, for the appointment of a receiver. On petition by a receiver appointed in chancery to have the federal receiver turn over to him for administration the property of the corporation. Petition denied.

Smith, Mabon & Herr, of Hoboken, N. J., for chancery receiver.
Heyman & Heyman, of Jersey, City, N. J., for federal receiver.

DAVIS, District Judge. On September 30, 1916, a bill was filed in this court by Frederick Kessler, Frieda Kessler, Isaac Kraus, Theresa McCormack, and John C. Hitchman against William Necker, Incorporated. John C. Hitchman is a creditor and the other complainants are stockholders of the defendant company, which owns and conducts the business of a large undertaking establishment. Some time before the filing of said bill, William Necker, who was a large owner in the company and conducted and practically controlled the same, died. The company was in fact a one-man concern. The complainants, inter alia, allege:

"The death of William Necker, as your orators are informed and believe, has also seriously affected the immediate credit of the company, and many of the creditors of the company have instituted suits, some in the state of New York by attachment proceedings, and others in the state of New Jersey by summons and complaint. A large part of the current indebtedness, consisting of bills payable at banks, bills payable for merchandise, and the general accounts payable, is now overdue or will shortly be growing due, and the creditors holding these claims are pressing for payment, while the defendant is at the present time unable to pay these claims without withdrawing from its business the funds constantly needed to meet labor and other immediate cur-

⊂∞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rent necessities, and it is certain that, if judgments are recovered against the defendant upon the suits already instituted, other creditors holding over-due claims against the defendant will also vigorously prosecute their claims to judgment. The defendant is therefore threatened with judgments upon the suits already instituted and with further suits at the instance of other credi-tors and with numerous execution sales, all of which will necessarily result in the disruption and suspension of its business, the destruction of its good will and of its business organization, the dissipation and shrinkage of its as-sets to the great detriment of all the creditors and stockholders. * * *"

And they pray:

"That the claim and interest of your orators in the premises, as well as that of all other creditors and stockholders, may be ascertained and determined, and the assets of said defendant corporation marshaled, and the liens and priorities of all parties in interest therein determined and adjudged, * * * and that the assets of said corporation may be administered as a trust fund for the benefit of your orators and all others having an interest therein, and that it may be adjudged and determined that said business has been and is being conducted at a loss and in a manner greatly prejudicial to the interest of its stockholders. * * *

"May it please your honors, the premises considered, to grant unto your orators the writ of injunction issuing in due form of law to said William Necker. Incorporated, restraining it and its officers and agents from further exercising its franchises and from collecting or receiving any of its debts due to it, or paying out, selling, assigning or transferring any of its estate, moneys, funds, lands, tenements, or effects, except to a receiver or receivers appointed by the court."

On the same day, September 30, 1916, the defendant company filed its answer, admitted the allegations of the bill of complaint, joined in the prayer, praying that this court, sitting in equity, might take possession of all the property and business of the defendant, through the appointment of a receiver, and preserve and protect the property from being sacrificed, and empower and authorize such receiver to take possession of the business and property of the defendant, pay all in-debtedness due or to become due by the defendant, and otherwise discharge the ordinary duties imposed by the court upon receivers, and that the proceeds arising from the sale of said property of the defendant corporation be applied to its indebtedness, etc. Whereupon this court appointed a temporary receiver, who, upon consent of the corporation, the creditors and stockholders, was made permanent on October 23, 1916.

The receiver continued the business of the corporation from that time until the present, with the consent of the company, the cred-itors, and stockholders, except the complainants in chancery pro-ceedings, who first made known their objection by filing said proceed-ings in chancery about April 1, 1919, 2½ years after the receiver was appointed, and more than a month after he had filed his fifth re-port, wherein he reported that the business could not be continued without loss to the creditors and stockholders, and filed his petition, praying for permission to dispose of the property. Upon rule to show cause why the assets of the company should not be disposed of, and upon notice to all creditors and stockholders, this court, with the consent of the corporation, creditors, and stockholders, directed the receiver to advertise the property for sale. This was done, and on the day of the sale it was reported to the court that no bid could be

secured. The receiver subsequently reported to the court that he had secured a bid upon the property, which, in his judgment, was a good offer and the best that could be obtained, whereupon a rule to show cause why said offer should not be accepted was granted, which was served upon all the creditors and stockholders.

Upon the return day it was intimated that there was a possibility of securing a better offer, whereupon one or two adjournments were had with the consent of all parties interested, in order to ascertain if a better offer could be secured. Apparently no better and not even so good an offer could be secured by the receiver, or any creditor or stockholder, and on or about April 1, 1919, just before the receiver was to accept the said offer, Fred Michel, a creditor, and others, filed their bill in the Court of Chancery of New Jersey, for the purpose of winding up the business and dissolving the corporation, whereupon that court appointed a statutory receiver, who by direction of said court has applied to this court for instructions, suggesting that this court never had jurisdiction of this cause, and, if it ever had, it has been superseded by the proceedings in the Court of Chancery, to which this court should now relinquish proceedings begun and conducted herein, and turn over the property of the company now in the possession of the receiver of this court, after the payment of his fees, to the receiver of the Court of Chancery.

[1] A federal District Court has original jurisdiction of all suits of a civil nature at common law or in equity, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, between citizens of different states. Judicial Code (Act March 3, 1911, c. 231) § 24, 36 Stat. 1091 (Comp. St. § 991). When the necessary elements, such as diverse citizenship and the required amount, exist, giving jurisdiction to a federal court, it may administer equitable rights created by valid state statutes, such as those created by section 65 of the New Jersey Corporation Act of April 21, 1896 (P. L. p. 298). National Surety Co. v. State Bank, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394; United States Shipbuilding Co. v. Conklin, 126 Fed. 132, 60 C. C. A. 680; Land Title & Trust Co. v. Asphalt Co. of America, 127 Fed. 1, 62 C. C. A. 23; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; Maguire v. Mortgage Co., 203 Fed. 858, 122 C. C. A. 83.

The one inhibition against the enforcement in a federal court of new equitable rights, created by state statute, is that such enforcement does not impair any right conferred, or conflict with any inhibition imposed, by the Constitution of the United States. When the necessary elements giving federal courts jurisdiction are present, the following rules are deducible from the cases relative to the jurisdiction and power of federal courts to enforce rights created and to administer remedies provided for enforcement and administration in state courts:

[2] 1. Rights, created or provided by the statutes of the states to be pursued in the state courts, may be enforced and administered in

258 F.—42

the federal courts, either at law or in equity, or in admiralty, as the nature of the new rights may require.

[3] 2. An enlargement of equitable rights by the statutes of the states may be administered by the federal courts, as well as by the courts of the states.

[4] 3. A party, by going into a federal court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. Darragh v. H. Wetter Manufacturing Co., 78 Fed. 7, 14, 23 C. C. A. 609, and the cases there cited.

The complainants in this bill are stockholders and contract creditors, whose claims have not been reduced to judgment. May either class—stockholders or simple contract creditors—maintain the bill; it being admitted that there are the other necessary elements giving this court jurisdiction? Judge Bradford, in the case of Jones et al. v. Mutual Fidelity Co. (C. C.) 123 Fed. 506, in a very careful and well-considered opinion, after reviewing the cases, held that simple contract creditor whose claim had not been reduced to judgment might maintain a bill in a federal court and have the assets of an insolvent corporation administered, where such administration is the enforcement of a purely equitable right by a purely equitable remedy, and where the prior exhaustion of the legal remedy would practically nullify the equitable remedy. The objection that a simple contract creditor whose claim has not been reduced to judgment may not maintain a bill is based upon the Seventh Amendment of the federal Constitution, which provides that:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

In the case of Scott v. Neely, supra, Mr. Justice Field, speaking for the court, said:

"In the federal courts this right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency. Such aid in the federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact."

That equitable relief can be granted in aid of a legal remedy, only after such remedy has been exhausted, precludes a conflict between legal and equitable remedies in the same suit. The substance of Judge Bradford's opinion, which has been followed in several cases, is contained in the following extract:

"There is a clear distinction between the exercise of equitable jurisdiction in aid of a legal remedy for the collection of a pecuniary legal demand, and the exercise of equitable jurisdiction in enforcing a purely equitable right by a purely equitable remedy, created by a valid state statute, not in aid of any legal remedy, but wholly independently thereof, though the existence of such equitable right and remedy may presuppose and be dependent on the existence of such pecuniary legal demand. * * * If the procedure and relief are essentially equitable, the circumstance that they bear relation to a legal demand is immaterial. Where the procedure and relief provided by a state statute are essentially equitable, and such relief is impossible of attainment

in any action at law, not owing to the existence of any accidental or abnormal obstacles or difficulties, but by reason of the essential nature of such action and legal process, a case for purely equitable cognizance under the statute is presented. Where equitable rights and remedies under a statute, founded on or bearing relation to pecuniary legal demands, would be defeated by exhausting the remedy at law on such demands, such equitable remedies cannot be considered as in aid of the legal remedy. Under such circumstances an exhaustion of the legal remedy would practically nullify the remedy in equity, and therefore, if force should be given to the statute, it would be not only unnecessary, but improper, before proceeding thereunder to exhaust the legal remedy."

Vice Chancellor Stevenson, in the cases of Gallagher et al. v. Asphalt Co. of America, 67 N. J. Eq. 441, 58 Atl. 403, and Helms v. International Steam-Pump Co. (unreported), distinguished between the New Jersey act and the act of Delaware with which Judge Bradford was dealing. In the New Jersey act, he says, the complainant, the creditor or stockholder, is the Attorney General pro hac vice; he gets nothing by his decree; he has to present and prove his claim before the receiver. The creditor in his conception is a kind of public benefactor, acting in behalf of the public in a semiofficial capacity for its protection. But Judge Archbald, sitting in this district by special assignment, in the case of Jacobs et al. v. Mexican Sugar Co. (C. C.) 130 Fed. 589, speaking of this New Jersey act, said:

"The complainant in such a bill, whether as stockholder or creditor, comes into court to protect his pecuniary interest, which is imperiled by the insolvency of the corporation and its inability to further carry out with success its corporate purposes. He seeks the intervention of the court in its affairs, in the manner provided by the statute, to save himself as far as possible from financial loss. No merely benevolent purpose to shield the general public from imposition by reason of its insolvent condition brings him there; nor does he move in behalf of the state, of which the corporation is a creature as would the Attorney General. * * * The proceeding is prosecuted by the complainant because of the direct personal interest which he has to subserve. If successful, there will, in the final outcome, when the corporate affairs are wound up, be a money decree establishing his right to a share in what is realized if the assets go far enough, or in favor of others who are necessarily brought into court by the proceeding if they do not."

In the New York act, from which the New Jersey act was copied, the Attorney General instituted proceedings, in behalf of the state, to protect the public generally; but in the New Jersey act any creditor or stockholder may file the bill. The purpose of this change was doubtless to enable any creditor or stockholder to maintain the suit in order to protect his own personal interest, without the handicap of having to act through the Attorney General, the purpose of whose action was general, and not individual. In the act of Delaware the bill may be filed by any creditor or stockholder, just as may be done under authority of the New Jersey act. The object of the complainant under both acts is the same, the protection of the individual interest of the complainant.

[5] The Circuit Court of Appeals of the Fourth Circuit in the case of McGraw v. Mott, 179 Fed. 646, 103 C. C. A. 204, following Judge Bradford, held that a simple contract creditor may maintain a bill in the federal court under authority of section 65 of the New Jersey

Corporation Act. Judge Archbald, on the contrary in the case of Jacobs et al. v. Mexican Sugar Co., supra, held that Jacobs, as a simple contract creditor whose claim had not been reduced to judgment, could not maintain a bill in the federal court under the authority of section 65 of the New Jersey Corporation Act of 1896, because it was in violation of the Seventh Amendment to the federal Constitution, but held that, as a stockholder, he could maintain it. It is not necessary, however, to sustain the bill on the ground that the complainants, or any of them, were simple contract creditors. All of them but two, one original and one intervening, were stockholders, and as such may maintain the action. Jacobs et al. v. Mexican Sugar Co., supra; Scattergood et al. v. American Pipe & Construction Co., 249 Fed. 23, 161 C. C. A. 83.

[6] Again, no objection was raised to the jurisdiction of this court by the corporation or any one else on any ground whatever; but, on the contrary, the corporation filed an answer, wherein it admitted the allegations of the bill and joined in the prayer thereof, in asking the court to take jurisdiction and appoint a receiver. The corporation was the proper party to raise any objection on any ground to the jurisdiction of this court. The corporation having waived the jurisdictional question, it may not now be raised by the receiver in chancery. Citizens' Bank & Trust Co. et al. v. Union Mining & Gold Co. (C. C.) 106 Fed. 97; McGraw v. Mott, 179 Fed. 646, 103 C. C. A. 204. Defenses existing in equity suits may be waived, just as they may in law actions, and when waived the cases stand as though the objections never existed. Given a suit in which there is jurisdiction of the parties in a matter within the general scope of courts of equity, and a decree rendered will be binding, though the defenses, if made, would have resulted in a dismissal of the case. Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934; Brown v. Lake, 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021. The Circuit Court of Appeals of the Second Circuit held in the case of Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 721, 737, 117 C. C. A. 503, 519, that unless the corporation objected a suit might be maintained on the equity side of a federal court without the necessity of a judgment on a legal demand. "And now," said Judge Noyes, speaking for the court, "that which was formerly regarded as the essential thing—the judgment—is unnecessary unless the corporation objects." In the case of In re Metropolitan Railway Receivership, 208 U. S. 90, 109, 28 Sup. Ct. 219, 224 (52 L. Ed. 403), the Supreme Court held that the fact that a simple contract claim had not been reduced to judgment and execution issued thereon might be waived in a court of equity. Mr. Justice Peckham, speaking for the court, said:

"It is also objected that the Circuit Court had no jurisdiction, because the complainants were not judgment creditors, but were simply creditors at large of the defendant railways. The objection was not taken before the Circuit Court by any of the parties to the suit, but was waived by the defendant consenting to the appointment of the receivers, and admitting all the facts averred in the bill. Hollins v. Brierfield Coal & Iron Company, 150 U. S. 371, 380 [14 Sup. Ct. 127, 37 L. Ed. 1113]. That the complainant has not exhausted his remedy at law—for example, not having obtained any judgment

or issued any execution thereon—is a defense in an equity suit, which may be waived, as is stated in the opinion in the above case, and, when waived, the case stands as though the objection never existed.

"In the case in the Circuit Court the consent of the defendant to the appointment of receivers, without setting up the defense that the complainants were not judgment creditors who had issued an execution which was returned unsatisfied, in whole or in part, amounted to a waiver of that defense. Brown v. Lake Superior Iron Co., 134 U. S. 550 [10 Sup. Ct. 604, 33 L. Ed. 1021]; Town of Mentz v. Cook, 108 N. Y. 504, 508 [15 N. E. 541]; Horn v. Pere Marquette R. R. Co. [C. C.] 151 Fed. 626, 633."

This court has jurisdiction of the parties, whose citizenship is diverse, the requisite amount is in controversy, and the subject-matter is equitable in its nature. It is therefore too late for the complainants in the Court of Chancery, who waived defenses and consented to the jurisdiction of this court for 2½ years, or slept on their supposed rights, to raise the objection at this time that this court is without jurisdiction.

It was held by the Circuit Court of Appeals of this circuit in the case of Scattergood et al. v. American Pipe & Construction Co., supra, that a stockholder's bill in an ancillary jurisdiction will be maintained when the corporation, in a financially embarrassed condition, voluntarily appeared and filed answer, admitting the allegations of the bill. That case lays down the law of this circuit and is binding upon this court. The allegations of the bill in that case are practically parallel with those of the bill in the present case. The reasoning followed and the conclusions reached by the court in that case force the conclusion that this court, in the state and district of the corporation, has jurisdiction under the facts of the present case, and should retain control of the assets in its possession and administer them.

[7] The question of conflicting or concurrent jurisdiction between state and federal courts should always be approached with the utmost care and consideration. It is so easy, when a court is sensitive about its jurisdiction or prerogatives, to enter into conflict to the serious injury of the creditors. The practical purpose of courts generally is to see that insolvent estates are administered economically, so that the largest possible dividend may be paid to creditors and the interest of stockholders preserved. For the accomplishment of this purpose comity between state and federal courts should be extended to its largest limits. In the present case, the receiver has conducted the business of the corporation since September 30, 1916. It is conceded by every one, so far as I am aware, that his conduct of the business has been excellent. There has not been even a hint that the business has not been conducted well. The company is hopelessly insolvent. In the opinion of the receiver, and every one so far as I know, the time has come when the business should be wound up and the property disposed of. The court directed the receiver to advertise the property for sale. This has been done, and he now has admittedly the highest possible offer for it. No better offer, and not even so good, has been secured, though the sale was adjourned several times in order to enable creditors and others, including complainants in chancery, to secure a larger offer but without success. Since September 30, 1916,

the complainants in chancery have consented to, or stood by and watched, the conduct of this business by the receiver of this court, and now, when it is about to be closed up, they come forward and, not denying that the business should be wound up and the property disposed of, say the job should be given to them or their receiver, and the property in the possession of the federal receiver turned over to the chancery receiver. It is difficult for me to understand their motive, for everything that the receiver has done toward winding up the business must be done again by the chancery receiver, if the property of the corporation is turned over to him, all to no purpose, and at the expense of the creditors. Neither on legal principle nor economic policy can I conceive a good reason why this should be done, and under the facts of this case my duty to the creditors demands that I direct the receiver of this court to continue to wind up the business of the said company, in accordance with the order heretofore made.